

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FIRST CLASS MAIL, POSTAGE PREPAID, TO (SEE BELOW) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF RECORD IN THIS ACTION ON THIS DATE

TO:         DATE:        DEPUTY CLERK:

to Plaintiff on 6-27-2014 by TS

FILED
CLERK, U.S. DISTRICT COURT

June 27, 2014

CENTRAL DISTRICT OF CALIFORNIA
BY: ___TS___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| JAMES MONROE, | ) No. CV 14-03202-SJO (DFM) |
|---|---|
| Plaintiff, | ) |
| v. | ) MEMORANDUM AND ORDER |
| J. HEINLEN et al., | ) DISMISSING COMPLAINT WITH |
| | ) LEAVE TO AMEND |
| Defendants. | ) |

## I.

## INTRODUCTION

Plaintiff James Monroe ("Plaintiff"), currently incarcerated at the California State Prison, Los Angeles County ("LAC") in Lancaster, California, filed a pro se civil rights Complaint on May 13, 2014, after being granted leave to proceed in forma pauperis. Dkt. 3 ("Complaint").[1]

Plaintiff names the following Defendants, who are all current or former employees of the California Department of Corrections and Rehabilitation ("CDCR"): (1) Correctional Officer J. Heinlen; (2) former CDCR Secretary

---

[1] All page citations to the Complaint are to the CM/ECF pagination.

Matthew Cate; (3) LAC Warden J. Soto; (4) LAC Associate Warden C. Ynson; (5) Captain T. Nunez; (6) Lieutenant G. Marshall; (7) Lieutenant I. Mijares; (8) Sergeant F. Villalobos; (9) Sergeant J. Sebok; (10) Chief Appeals Coordinator J.D. Lozano; and (11) Chief Appeals Coordinator J.A. Zamora. Complaint at 12-15. Plaintiff has named Heinlen in both his individual and official capacities; all of the remaining Defendants are named in their official capacity only. Id.

In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court must screen the Complaint before ordering service for purposes of determining whether the action is frivolous or malicious; or fails to state a claim on which relief might be granted; or seeks monetary relief against a defendant who is immune from such relief.

## II.
## SUMMARY OF PLAINTIFF'S ALLEGATIONS

The gravamen of Plaintiff's complaint is his claim that Heinlen retaliated against Plaintiff for agreeing to have a transgender cellmate and for filing prison grievances against Heinlen. Plaintiff alleges that, in April 2013, Heinlen told him that he did not want any "fags" or "transsexual inmates" in Heinlen's housing unit. Complaint at 2. Heinlen allegedly told Plaintiff to exchange jobs with another inmate and to move out of the unit because he did not want any "fags in the building, or working for him." Id. When Plaintiff refused, Heinlen retaliated against him for the next four months by tampering with Plaintiff's mail; terminating Plaintiff's work duties; filing false Rules Violation Reports ("RVR") against Plaintiff; verbally threatening him; and informing other inmates that Plaintiff was a "jailhouse snitch" and a pedophile with the intent that these inmates would physically assault Plaintiff. Id. at 5.

Plaintiff alleges that Cate, Soto, Ynson, Nunez, Marshall, Mijares, Villalobos, and Sebok, as Heinlen's supervisors, were directly responsible for

2

Heinlen's misconduct. Id. at 12-15. Finally, Plaintiff alleges that Lozano and Zamora "deliberately use[d] unethical methods to stall, screen out [and] dismiss" Plaintiff's prisoner grievances that he filed against Heinlen. Id. at 15.

Plaintiff alleges that his Eighth Amendment rights were violated by Heinlen's "deliberate indifference." Id. at 16. He also alleges that his Fourteenth Amendment right to due process was violated by the mishandling of his prison grievances. Id. Although he does not label it as such, Plaintiff also seems to be claiming that his First Amendment rights were violated when Heinlen retaliated against him for filing prisoner grievances. Id. He seeks compensatory and punitive damages, a temporary and a permanent injunction, and expungement of the allegedly false RVRs. Id. at 19.

## III.
## STANDARD OF REVIEW

The Court's screening of the Complaint is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Further, since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and must afford Plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251,

1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)).  Moreover, with respect to Plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (holding that to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).

      If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend.  <u>Lopez v. Smith,</u> 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is <u>pro se. Id.</u> at 1130-31; <u>see also</u> <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (noting that "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment") (citing <u>Noll v. Carlson,</u> 809 F.2d 1446, 1448 (9th Cir. 1987)). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. <u>Cato</u>, 70 F.3d at 1105-06; <u>see, e.g.</u>, <u>Chaset v. Fleer/Skybox Int'l</u>, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is

no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that "[b]ecause any amendment would be futile, there was no need to prolong the litigation by permitting further amendment").

## IV.
## DISCUSSION

### A. Plaintiff's Allegations Are Insufficient to State a Claim Against the Defendants in Their Official Capacities

Plaintiff names each of the Defendants in his official capacity. The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166. Here, all of the Defendants are officers or agents of the CDCR. Therefore, all of Plaintiff's claims against Defendants in their official capacities are tantamount to claims against the CDCR.

However, states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights claims for damages under 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 64–66 (1989); see also Hafer v. Melo, 502 U.S. 21, 30 (1991) (clarifying that the Eleventh Amendment does not bar suits against state officials sued in their individual capacities nor for prospective injunctive relief against state officials sued in their official capacities). The CDCR is an agency of the State of California and, therefore, entitled to Eleventh Amendment immunity. See Brown v. Cal. Dep't of Corrections, 554 F.3d 747, 752 (9th Cir. 2009).

To overcome the Eleventh Amendment bar on federal jurisdiction over

suits by individuals against a State and its instrumentalities, either the State must have "unequivocally expressed" its consent to waive its sovereign immunity or Congress must have abrogated it. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99–100 (1984). California has consented to be sued in its own courts pursuant to the California Tort Claims Act, but such consent does not constitute consent to suit in federal court. See BV Engineering v. Univ. of Cal., Los Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988); see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (holding that Art. III, § 5 of the California Constitution did not constitute a waiver of the state's Eleventh Amendment immunity). Furthermore, Congress has not abrogated State sovereign immunity against suits under 42 U.S.C. § 1983.

Accordingly, Plaintiff's claims for damages against the Defendants in their official capacities are barred by the Eleventh Amendment.

**B.** **Plaintiff Has Failed to State a Claim Against Cate, Soto, Ynson, Nunez, Marshall, Mijares, Villalobos, or Sebok**

The above-named Defendants have been sued solely on the basis of supervisory liability. See Complaint at 12-13. Supervisory personnel are generally not liable under 42 U.S.C. § 1983 on any theory of respondeat superior or vicarious liability in the absence of a state law imposing such liability. See, e.g., Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). In Iqbal, 556 U.S. at 676, the Supreme Court reaffirmed that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior liability." However, the Ninth Circuit has concluded that, at least in cases where the applicable standard is deliberate indifference (such as for an Eighth Amendment claim), Iqbal does not foreclose a plaintiff from stating a claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in

unconstitutional conduct by his or her subordinates." <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011).  The Ninth Circuit thus held:

> A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' '[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury.  The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.'
>
> 'The requisite causal connection can be established . . . by setting in motion a series of acts by others,' or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.' 'A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'

<u>Id.</u> at 1207-08 (internal citations omitted, alterations in original). In addition, to premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. <u>See, e.g.</u>, <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989); <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1474 (9th Cir. 1992).

Here, Plaintiff names Cate, Soto, Ynson, Nunez, Marshall, Mijares, Villalobos, and Sebok as Defendants solely on the basis that they are Heinlen's

7

supervisors, but fails to set forth any specific allegations that they personally participated in Plaintiff's alleged mistreatment by Heinlen.[2] Nor does Plaintiff set forth any factual allegations that these Defendants either personally promulgated any policy that had a direct causal connection with the constitutional injuries of which Plaintiff complains or knowingly acquiesced to Heinlen's alleged misconduct.[3] Accordingly, Plaintiff's claims against Cate, Soto, Ynson, Nunez, Marshall, Mijares, Villalobos, and Sebok fail to state a claim.

C. **Plaintiff Has Failed to State a Claim With Respect to the Processing and Review of His Prison Grievances**

Plaintiff alleges that Defendants Lozano and Zamora, as appeals coordinators who reviewed Plaintiff's inmate grievances, violated his Fourteenth Amendment due process rights by "deliberately us[ing] unethical methods to stall, screen out [and] dismiss" the grievances Plaintiff filed against Heinlen regarding the events alleged in the Complaint. Complaint at 15. However, a prisoner has no constitutional right to an effective grievance or appeal procedure, and actions in reviewing and denying inmate appeals cannot

---

[2] Moreover, the Court notes that Matthew Cate was not the Secretary of the CDCR at the time of the events in question in 2013, having left that position in 2012.

[3] By way of contrast to the Complaint here, the complaint in Starr specifically alleged numerous incidents in which inmates in Los Angeles County jails had been killed or injured because of the culpable actions of the subordinates of Sheriff Baca; specifically alleged that Sheriff Baca was given notice of all of these incidents; specifically alleged that Sheriff Baca also was given notice, in several reports, of systematic problems in the county jails under his supervision that had resulted in these deaths and injuries; and specifically alleged that Sheriff Baca did not take action to protect inmates under his care despite the dangers created by the actions of his subordinates, of which he had been made aware. See Starr, 652 F.3d at 1216.

serve as a basis for liability under § 1983. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible and that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"); Wright v. Shapirshteyn, No. 06-0927, 2009 WL 361951, *3 (E.D. Cal. Feb. 12, 2009) (noting that "where a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983").

Here, the Complaint does not allege any facts that establish either personal involvement by Lozano or Zamora in Plaintiff's alleged mistreatment by Heinlen or any direct causal connection between any action or inaction on the part of these Defendants and the alleged constitutional violation. Accordingly, Plaintiff has failed to state a claim with respect to any of his claims regarding the processing and review of his prison grievances.

**D.     Plaintiff Has Failed to State a Claim Related to Falsified RVRs**

Plaintiff appears to allege an unspecified claim against Heinlen for the filing of "false []RVR reports." Complaint at 19. To the extent Plaintiff seeks to allege a violation of his due process rights on the basis of a falsified RVR, such allegations do not state a claim.

The Second Circuit has held in the context of an action brought under 42 U.S.C. § 1983 that, "[a]lthough prisoners are entitled to be free from arbitrary action and conduct of prison officials, the protections against arbitrary action 'are the procedural due process requirements as set forth in Wolff v. McDonnell[, 418 U.S. 539 (1974)].'" Freeman v. Rideout, 808 F.2d 949, 952 (2nd Cir. 1986) (quoting Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.

9

1984)).[4] Prisoners have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," but they do have "the right not to be deprived of a protected liberty interest without due process of law." Freeman, 808 F.2d at 951; see also Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (finding inmate's claims based upon falsity of charges brought by a prison counselor did not state a constitutional claim). Therefore, "[w]hile in no way condoning "trumped up charges" or the use of "falsified documents" in any official proceeding, even the filing of false disciplinary charges is not itself a due process violation, provided the procedural due process requirements of Wolff are observed." Deadmon v. Grannis, No. 06-382, 2008 WL 595883, *10 (S.D. Cal. Feb. 29, 2008); see also Penton v. Huber, No. 11-3319, 2013 WL 1156501 at *9 (E.D. Cal. March 19, 2013)("The Due Process Clause itself does not contain any language that grants a broad right to be free from allegedly false accusations.").

Based on the foregoing, Plaintiff's allegations of a fabricated RVR alone do not support a cognizable due process claim. Therefore any such due process claim against Heinlen is subject to dismissal.

///
///
///
///

---

[4] Under the Due Process Clause, a prisoner is entitled to certain procedural protections when he is charged with a disciplinary violation. Wolff, 418 U.S. at 564-71. These protections include a written notice at least twenty-four hours before the disciplinary hearing, an opportunity to call witnesses and present documentary evidence, and a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken. Id.

## V.
## CONCLUSION

Because Plaintiff's official-capacity claims against all Defendants, his supervisory claim against Cate, Soto, Ynson, Nunez, Marshall, Mijares, Villalobos, and Sebok, his claims regarding the processing of his prisoner grievances, and his due process claims based on an alleged false RVR fail to state a claim on which relief may be granted, the Complaint is subject to dismissal. Because it is not absolutely clear that Plaintiff's pleading deficiencies cannot be cured by amendment, such dismissal will be with leave to amend. Accordingly, if Plaintiff still desires to pursue his claims, he shall file a First Amended Complaint within thirty-five (35) days of the date of this Order remedying the deficiencies discussed above. Plaintiff's Amended Complaint should bear the docket number assigned in this case; be labeled "First Amended Complaint"; and be complete in and of itself without reference to the prior complaints or any other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is encouraged to utilize.

**Plaintiff is admonished that, if he fails to timely file a First Amended Complaint, the Court will recommend that this action be dismissed with prejudice for failure to diligently prosecute.**

Dated: June 27, 2014

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge